## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KARA K.,[1] | ) |
|            Plaintiff, | )   No. 23 CV 521 |
| v. | )   Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|            Defendant. | )   November 17, 2025 |

### MEMORANDUM OPINION and ORDER

Kara K. seeks disability benefits asserting that she is disabled by left eye blindness, headaches, migraines, bipolar disorder, ADHD, anxiety, depression, OCD, obesity, and bilateral knee osteoarthritis and chondromalacia, among other impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application. For the following reasons, Kara's remand request is granted:

### Procedural History

Kara filed an application in August 2018 claiming disability onset on July 17, 2015. (Administrative Record ("A.R.") 15, 205-06.) Her application was denied at the administrative level, (id. at 67-105), and then she appeared with her attorney at an April 2020 hearing at which she and a vocational expert ("VE") testified, (id. at 33-66). Later that month, the initially assigned Administrative Law Judge ("ALJ-1")

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Kara's first name and last initial in this opinion to protect her privacy to the extent possible.

found that Kara is not disabled. (Id. at 15-27.) The Appeals Council denied Kara's request for review, (id. at 1-6), and she sought judicial review in the District of Kansas. But the government voluntarily requested remand, and the court granted that request. (See A.R. 1016-19.)

On remand the Appeals Council instructed a different ALJ ("ALJ-2" or "the ALJ") to "articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record." (Id. at 1024-25.) The Appeals Council noted that ALJ-1 found the state agency psychologists' and physicians' opinions somewhat persuasive and persuasive, respectively, but did not adequately cite to the record or otherwise explain "the supportability and consistency of the opinions." (Id.) The Appeals Council continued that while ALJ-1 precluded Kara from working in jobs "requiring depth perception" and limited her to "frequent near and far acuity," he did not explain why he omitted "vision limitations of accommodation, color vision and field of vision" from Kara's residual functional capacity ("RFC"), despite the state agency physicians' determination that more limitations in the left eye were warranted. (Id.) Accordingly, the Appeals Council directed ALJ-2 to "further consider[] the State agency opinions" and reassess Kara's "maximum" RFC, providing "rationale with specific references to evidence of record in support of assessed limitations." (Id. at 1025.) The Appeals Council also directed ALJ-2 to obtain "supplemental evidence" from a VE if necessary "to clarify the effect of the assessed limitations on [Kara's] occupational base" by posing "hypothetical

questions [reflecting] the specific capacity/limitations established by the record as a whole." (Id.)

Kara then had a hearing before ALJ-2 in November 2022, where she appeared with her attorney and a VE testified. (Id. at 944-86, 1049-59, 1077-96.) Thereafter, ALJ-2 ruled that Kara is not disabled. (Id. at 920-36.) The Appeals Council denied Kara's request for review, (id. at 1022-27), making ALJ-2's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Kara seeks judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## Analysis

Kara argues that ALJ-2 failed to identify substantial evidence to support the RFC he assessed, including by not sufficiently considering her visual limitations or the combined effects of her mental and physical impairments. (See generally R. 12, Pl.'s Mot.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v.*

*Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (citation omitted). Having considered the arguments and record under this standard, the court finds that remand is warranted.

### A.    Visual Limitations

Kara argues that even after the Appeals Council directed ALJ-2 to address visual limitations relating to "accommodation, color vision and field of vision," he failed to do so in a meaningful way. (R. 12, Pl.'s Mot. at 8, 10-12.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether he considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and his conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

ALJ-1 assessed the following visual limitations in his decision regarding Kara's claim: "No jobs requiring depth perception, and she is limited to frequent near and far acuity." (A.R. 20.) On remand the Appeals Council tasked ALJ-2 with

4

addressing Kara's "limitations of accommodation, color vision and field of vision," resulting in part from the loss of vision in her left eye. (Id. at 1024-25.) After considering the record, ALJ-2 crafted an RFC that limits Kara in relevant part to light work in "occupations requiring only frequent near and far acuity, field of vision, depth perception, accommodation and color vision." (Id. at 927.) He also found that Kara can "handle and work with rather large objects" but should "avoid ordinary hazards in the workplace," such as "boxes on the floor, approaching people, etc." (Id.)

In so finding, the ALJ acknowledged Kara's complaints of vision blurriness and difficulty reading, driving, and looking at computer screens. (Id. at 928.) He also discussed the medical evidence reflecting diagnoses of "contracted left visual field," cataracts, astigmatism, myopia, ocular hypertension, and dry eyes, and noted that despite corrective surgery, Kara lost vision in her left eye. (Id.) The ALJ continued that before corrective surgery in her right eye, Kara was nearly unable to count fingers or detect hand motion, but surgery allowed her to achieve stable 20/20 vision in that eye, (id.), despite a "gritty and sandy sensation," (id. at 951). The ALJ considered Kara's arguments that she not only has depth perception limitations but also limitations from "a deficiency in tear film" and "near and far acuity," (id. at 928), along with her testimony that she can drive and use the Internet to search for audiobooks, (id. at 931-32).

When developing Kara's RFC, the ALJ also considered the opinion evidence, including the state agency physicians' opinions that Kara can perform light work with visual and environmental limitations. (Id. at 931 (citing id. at 78-79, 98-99 (noting

"[l]imited" depth perception, accommodation, color vision, and field of vision in left eye)).) The state agency physicians explained that congenital cataracts caused total vision loss in Kara's left eye, limiting her near and far acuity, depth perception, accommodation, and color and field vision in that eye. (Id.) The ALJ found these opinions "partially persuasive" because the state agency physicians "supported their opinions with citations to the record" but found that greater restrictions, such as occasional use of foot controls, were warranted. (Id.)

Kara insists that the ALJ improperly "waved away ongoing dire findings" concerning her vision, including "aphakia (missing lens), amblyopia (impaired vision without obvious defect), esotropia (misalignment), scarring, and pigment mottling." (R. 12, Pl.'s Mot. at 11.) As the government points out, however, the ALJ found that Kara suffers from total vision loss in her left eye, (R. 16, Govt.'s Mem at 4; see also A.R. 928), and discussed treatment records documenting contracted left visual field, cataracts, astigmatism, myopia, and ocular hypertension in her left eye, (A.R. 928), along with dry-eye syndrome in both eyes, (R. 16, Govt.'s Mem. at 5 (citing A.R. 466, 928)). The ALJ also noted that Kara's ophthalmologist recommended that her dry eyes be treated with "daily hot compresses[,] artificial tear drops," fish oil, and "[o]ccasional[] prescription or topical medications." (A.R. 928 (citing id. at 466).) Thus, this complaint alone does not warrant remand. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("It is not enough to nitpick the ALJ's order. To warrant reversal, [the claimant] must show that the ALJ's determination was not supported by substantial evidence.").

Kara further asserts that the ALJ failed to properly consider the disabling effect of "the repetitive use of her eyes" combined with her "weekly severe headaches or migraines." (R. 12, Pl.'s Br. at 10-11.) Yet the ALJ discussed Kara's symptom allegations, objective medical evidence, and treatment records relating to her headaches and migraines and found that "the record [did] not support the frequency and severity alleged" as to those symptoms. (A.R. 929.) The ALJ nonetheless accommodated Kara's "reported triggers of loud noises, bright lights, and vision" issues related to her headaches and migraines by limiting Kara to "occasionally work[ing] in loud noises and/or bright and flashing lights beyond a level found in an indoor work environment such as an office or retail store." (A.R. 927-29.) As such, the ALJ adequately considered the combined effect of Kara's eye use and headaches and migraines.

Finally, Kara challenges the ALJ's finding that she can perform jobs "requiring 'only frequent' near and far acuity, field of vision, depth perception, accommodation and color vision," pointing out that "frequent" is defined for these purposes as "occurring from one-third to two-thirds of the time," which she argues "is not really a limitation." (R. 12, Pl.'s Br. at 10.) This argument does not sway the court because the ALJ's role is to assess "the most [a claimant] can still do despite [her] limitations," based on the record evidence. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Still, the path the ALJ took to arrive at this "frequent" level of limitation requires remand because he failed to obtain substantial evidence from the VE "clarify[ing] the effect of the assessed limitations on [Kara's]

occupational base" by posing "hypothetical questions [reflecting] the specific capacity/limitations established by the record as a whole," as the Appeals Council directed. (A.R. 1025.)

To be sure, Kara questions the reliability of the ALJ's decision based on his questioning of the VE at the second administrative hearing, where the ALJ posed a hypothetical providing "only occasional near and far acuity, field of vision, depth perception . . . and color vision" and the ability to "work with rather large objects." (R. 12, Pl.'s Mot. at 11; A.R. 975.) The VE responded that if visual restrictions were reduced to the "occasional level," they would be inconsistent with the ability to work with large objects, meaning there are "no occupations that match the description." (A.R. 976.) But when the ALJ changed the hypothetical to "replace occasional with frequent," the VE confirmed that jobs would be available in the national economy, including housekeeping (700,000 jobs), linen supply load builder (580,000 jobs), and merchandise marker (2.4 million jobs). (Id.) The ALJ adopted "frequent" visual restrictions in the RFC. (Id. at 927.)

Kara suggests that the ALJ "leapt to his untenable finding that [her documented vision] deficits [were] accommodated with frequent use," rather than occasional use, to deliberately prevent a disability finding. (R. 12, Pl.'s Mot. at 11-12.) The government disagrees, pointing for support to the ALJ's second hypothetical, which describes visual restrictions as "no vision on the left," "only *occasional* near and far acuity, field of vision, depth perception, accommodation and color vision on the right," and no restriction concerning work with large objects. (R. 16, Govt.'s Mem.

at 6 (emphasis added) (quoting A.R. 977).)  The government suggests that under this second hypothetical, the VE found "an occupational base" for a hypothetical person like Kara to perform.  (Id.)  But the VE responded to this hypothetical as follows: "Okay, [if] we don't have binocular vision, we can't have depth perception.  That would be precluded just with the loss of one eye.  And let me check.  Your honor, under this hypothetical there is an occupational base.  These will be in the light exertional category, unskilled."  (A.R. 977-78.)  In other words, the VE acknowledges that without binocular vision, which Kara does not, the individual in the hypothetical cannot have depth perception.  (Id.)  Nevertheless, the government seizes upon the VE's testimony that "there is an occupational base" to suggest sufficient jobs in the national economy remain for Kara to perform.  (R. 16, Govt.'s Mem. at 6.)

Given the VE's testimony, the ALJ was required to clarify the effect of the assessed limitations on Kara's occupational base because Kara could not perform the work described because of monocular vision, which significantly affects her depth perception.  (See A.R. 977-78; R. 12, Pl.'s Mot. at 10 n.1.)  This is especially true where, as here, the VE's testimony in this regard is consistent with ALJ-1's finding that Kara cannot perform any jobs requiring depth perception.  (A.R. 20, 977-78.)  ALJ-2 departed from these findings, limiting Kara to "only frequent . . . depth perception," (id. at 927), without explaining why he "loosened the restriction," (see R. 12, Pl.'s Mot. at 10).  And he did not explain why he went beyond the Appeals Council's directive on remand—to address Kara's "vision limitations of accommodation, color vision and field of vision"—by including the level of depth

perception ALJ-1 adopted. (A.R. 1024-25.) While the court has no reason to believe the ALJ committed any professional impropriety as Kara suggests, his decision does not "say enough to enable review of whether he considered the totality of [Kara's] limitations," *Jarnutowski*, 48 F.4th at 774, or provide a "logical bridge" between the evidence and his assessed visual limitations, *Butler*, 4 F.4th at 501. Because the court cannot trace the ALJ's path of reasoning from the evidence to his conclusion, this case must be remanded.

## B.    Mental RFC

Kara argues that the ALJ also erred when assessing her mental RFC, including by failing to accommodate certain effects of her mental impairments, account for her moderate concentration, persistence, and pace ("CPP") restrictions, and consider the combined effect of her mental impairments and migraines. (R. 12, Pl.'s Mot. at 12-16.) At steps two and three of the sequential evaluation, the ALJ determined that Kara's depression, bipolar disorder, anxiety and panic disorder, OCD, ADHD, and migraines qualify as severe impairments but that they do not meet or medically equal a listing-level impairment. (A.R. 923-26.) Nevertheless, the ALJ assessed moderate limitations in the four paragraph B functional areas of CPP, interacting with others, adapting or managing oneself, and understanding, remembering, or applying information. (Id. at 926.) Before step four, the ALJ crafted a mental RFC indicating Kara can "apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements

involving only simple, work-related decisions and with only occasional judgment and workplace changes." (Id. at 927.) The ALJ further found that she can "occasionally respond to and have interaction with supervisors, coworkers and the general public." (Id.)

Kara says the ALJ improperly relied on her daily activities and ability to care for her children to justify moderate, rather than marked, limitations in the paragraph B criteria. (R. 12, Pl.'s Mot. at 12-13.) She is correct that an ALJ cannot equate daily activities like caring for children with the ability to sustain full-time work. (Id. at 3); *see also Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) ("[W]e have repeatedly cautioned against equating daily living activities with the ability to perform a full day of work, as the former are often subject to different restraints (e.g., longer periods within which to complete and more frequent opportunities to rest) and at times can be avoided only at great personal cost."). But the ALJ did not do so here. Rather, he considered Kara's numerous daily activities, such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for her grooming and hygiene, using telephones and directories, and using a post office," as well as her limitations in performing them, (A.R. 925, 927-30), without equating them with an ability to sustain full-time work.

Kara next asserts that the ALJ did not sufficiently account for her moderate CPP limitations by limiting her to "simple, repetitive tasks." (R. 12, Pl.'s Mot. at 13-15.) It is axiomatic that a limitation to simple and routine tasks may not suffice to accommodate a moderate CPP limitation. *See Martin v. Saul,* 950 F.3d 369, 373-74

11

(7th Cir. 2020) (holding that "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be"). But the ALJ imposed additional CPP-related limitations, indicating Kara can "apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes." (Id.)

Nonetheless, Kara argues that the ALJ erred by failing to refer to her "moderate difficulties with [CPP]" in the RFC or the hypothetical to the VE. (R. 12, Pl.'s Mem at 14.) But the government correctly points out that "the ALJ specifically discussed his 'Paragraph B' findings of moderate limitations when assessing the [RFC]," stating that Kara's "depression/bipolar[,] anxiety and panic disorder[,] OCD[,] and ADHD cause moderate difficulties with understanding, remembering, or applying information; [CPP]; and adapt[ing] and manag[ing] oneself." (R. 16, Govt.'s Mem. at 9 (citing A.R. 933).) Yet the ALJ did not do the same when posing the hypothetical to the VE upon which the ALJ ultimately relied. (See A.R. 975-76.)

The Seventh Circuit recently reiterated the importance of "orient[ing] the [VE] to the totality of a claimant's limitations," especially as to CPP limitations, to ensure the expert "offer[s] a reliable opinion about jobs the claimant could perform." *Moy v. Bisignano*, 142 F.4th 546, 552-53 (7th Cir. 2025) ("We have emphasized that 'both the hypothetical posed to the [vocational expert] and the ALJ's [residual functional

capacity] assessment must incorporate all of the claimant's limitations supported by the medical record,' including limitations in [CPP]." (citations omitted)).  In *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019), the Seventh Circuit found the first hypothetical posed to the VE—the one on which the ALJ relied—to be insufficient because it "did not direct the expert to consider problems with [CPP]."  In so finding, the Seventh Circuit instructed: "Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with [CPP]' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question."  *Id.* (citation omitted; emphasis in original).  Here, the ALJ failed to properly orient the VE to Kara's moderate CPP limitations, and therefore remand is also warranted on this basis.

Lastly, although the ALJ discussed treatment records revealing "exacerbations" of Kara's mental impairments, (A.R. 926, 930), Kara complains that the ALJ failed to consider her headaches and migraines in combination with her mental impairments, (R. 12, Pl.'s Mot. at 13).  Had he done so, Kara suggests that the ALJ may have crafted a more restrictive CPP limitation in the RFC.  (R. 12, Pl.'s Mot. at 13.)  The government counters that the ALJ found "the frequency and severity" of Kara's reported headaches and migraines to be inconsistent with treatment records, (R. 16, Govt.'s Mem. at 10), and he was only required to incorporate in the RFC limitations supported by the record, *see Bruno*, 817 Fed. Appx. at 242.  Furthermore, the ALJ expressly stated that the RFC he assessed was "based on the entire medical record," he considered the combined effect of Kara's headaches and migraines and

visual impairments, and he included RFC limitations to accommodate those effects. (A.R. 929, 933; see also R. 16, Govt.'s Mem. at 10.)  But because the ALJ never stated that he considered Kara's headaches and migraines in combination with her mental impairments and this case is already being remanded for other reasons, the ALJ should consider whether additional CPP limitations are warranted.

## Conclusion

For the foregoing reasons, Kara's remand request is granted.

ENTER:

Young B. Kim
United States Magistrate Judge